Clare J. Hoyt, J.
The issue presented is whether petitioner who admits homosexual acts during the five years preceding the filing of the petition should be denied naturalization for want of the “ good moral character ” required by Immigration and Nationality Act (U. S. Code, tit. 8, ■§ 1427).
The petition for naturalization was filed on May 4, 1961. At a hearing held in December of 1962 upon the petition, it was established from petitioner’s testimony and from the record of her hospitalization in 1958 at a mental institution that petitioner had engaged in homosexual activities in her native Denmark with a girl friend of her age and that this relationship continued for about six years, terminating in 1947, one year prior to petitioner’s emigration to the United States. It was further established that she resumed her homosexual activities in 1950 and that they continued to the hearing date, the activities having been had with two women. During this time petitioner was married and divorced, the marriage act never having been consummated.
As a result of this evidence the Government instituted deportation proceedings in August of 1964 on the charge that petitioner, at the time of entry, was a sexual deviate. The proceedings were terminated by the special inquiry officer on the ground that a homosexual is not, per se, a constitutional psychopathic inferior. The Board of Immigration Appeals reversed this determination, but approved the order terminating the proceeding on the ground that the Government had failed to prove that petitioner was a sexual deviate at the time of her entry.
From the proof adduced at the deportation hearings and from the proof adduced at the resumption of the naturalization hearings in November of 1966, the nature and extent of petitioner’s homosexual activities were more clearly established. From 1950 until February of 1963 petitioner lived with, successively, some six women, with all of whom she engaged regularly in homosexual practices. These women all had prior homosexual experiences and the acts were committed within petitioner’s home and never resulted from open solicitation.
Petitioner is presently and has for some 14 years been regularly employed by an oculist. She has never been convicted of any crime or offense, never discharged from any employment by reason of sexual deviation and a character investigation revealed that although she is known and reputed to be a lesbian, nothing else of a derogatory nature was disclosed. At the conclusion of *458 the hearings the designated Naturalization Examiner, by report dated February 3, 1967, recommended the petition be denied. The examiner concluded “ That the petitioner has not established she has been a person of good moral character for the period of five years immediately prior to the filing of her petition for naturalization as required by Section 316 (a) (8 USO 1427 (a)) of the Immigration and Nationality Act of 1952.”
Federal and State courts are vested with concurrent jurisdiction in naturalization matters (U. S. Code, tit. 8, § 1421). This proceeding came on for hearing in Dutchess County Supreme Court, the county of petitioner’s residence, and upon the stipulation of petitioner’s attorney, petitioner’s right to a trial de novo on the issues presented (U. S. Code, tit. 8, § 1447, subd. [b]) was waived and the matter was submitted on the record made before the Naturalization Hearing Officer without further testimony being taken. On this record it must be determined whether petitioner has established she was “ a person of good moral character ’ ’ during the five-year period preceding the filing of the petition.
Neither statute nor decision clearly answers this question. Judge Learned Hand’s definition of “ good moral character ” in Posusta v. United States (285 F. 2d 533, 534^535) establishes the standard to -be applied: “ it is settled that the test is not the personal moral principles of the individual judge or court before whom the applicant may come; the decision is to be based upon what he or it believes to be the ethical standards current at the time. * * *
‘ ‘ Obviously it is a test incapable of exact definition; the best we can do is to improvise the response that the ‘ ordinary ’ man or woman would make, if the question were put whether the conduct was consistent with a ‘ good moral character ’.”
Section 1101 of title 8 of the United States Code gives the various definitions of the terms used in the Immigration and Nationality Act (U. S. Code, tit. 8, ch. 12) and in subdivision (f) thereof enumerates specific categories of crime or misconduct precluding a finding of ‘ ‘ good moral character ’ ’. They are habitual drunkenness, adultery, polygamy or prostitution or other unlawful commercial vice, violation of immigration laws for gain, conviction of a crime of moral turpitude or for two or more offenses resulting in sentences of five years or more, conviction for illicit narcotic drug traffic, deriving income principally from gambling or conviction of gambling offenses, false testimony in immigration and naturalization proceedings, confinement in a penal institution for 180 days or more, and murder. *459 This subdivision concludes: ‘ ‘ The fact that any person is not within any of the foregoing classes shall not preclude a finding that for other reasons such person is or was not of good moral character ”.
Although petitioner is not charged with the commission of any of the enumerated crimes or misconduct and there is no proof thereof, they do assist in identifying the kind of conduct that should preclude naturalization and the final clause of the subdivision (§ 1101, subd. [f]) does not limit denials to these categories.
Although Congress added sexual deviates to the list of aliens who are ineligible to receive visas and who are excluded from admission to the United States (U. S. Code, tit. 8, § 1182, subd. [a], par. [4]) by a 1965 amendment to the Immigration and Nationality Act (79 U. S. Stat. 919; § 15, subd. [b]), it has not specifically enumerated homosexuality as a preclusion to a finding of “ good moral character
Judge Hand enjoins the court to resolve this issue by applying “ the ethical standards current at the time ” (Posusta v. United States, supra.) At the time must mean the time of the hearing before the court. Were we to attempt to ascertain the ethical standard that obtained when the petition was filed — here nearly 7 years ago — our task would be further complicated. Moreover the spirit of the Posusta decision would be violated because citizenship will be granted or denied this petitioner now, not retroactively, and her suitability for citizenship must be determined by reference to the standards now prevalent. Ascertaining those standards is another matter. No evidence is before the court concerning what the “ ordinary man or woman ” would say about private homosexuality between consenting adults. Surely such information is beyond the scope of traditional notions of what a court may judicially notice and yet determining the question by resort to a current public opinion sampling that meets evidentiary standards is not a practical alternative on a case by case basis (Schmidt v. United States, 177 F. 2d 450, 451). Posusta suggests that the court “ improvise the response that the ‘ ordinary ’ man or woman would make, if the question were put whether the conduct was consistent with a ‘ good moral character ’ ’ ’. While this is the best approach yet devised, its application is difficult.
Less than 10 years ago a New Jersey court wrote: “ Few behavioral deviations are more offensive to American mores than is homosexuality ” (H. v. H., 59 N. J. Super. 227). The texts of Kinsey and others, written in the mid 1950’s, were cited as *460 authority for this statement. While changes may have been wrought in the common view in the decade that followed those works, there is no reason to believe that the practice is now generally accepted.
Although the conduct of petitioner was not such as to be violative of any criminal statute, and although her activities were confined to her home and with persons with whom she lived, her admitted practices of these sexual deviations continually during the five years preceding the filing of her petition, are not, in the court’s opinion, consistent with good moral character as the “ ordinary man or woman ” sees it.
Accordingly, the petition is dismissed. Such dismissal is without prejudice to the filing of a new petition, should petitioner be so advised. There is no evidence in the record before the court of homosexual practices within the past five years.