# Bray *v.* The State.

*Petition for Habeas Corpus.*

1. *Habeas corpus; what is revisable thereby.*—Under the provisions of our statute, the writ of *habeas corpus* is not a revisory remedy, and can not be made to answer the purposes of an appeal, *certiorari* or writ of error; and when a judgment or sentence of another court is returned, as the cause of the petitioner's detention or imprisonment, the jurisdiction of the court to render that judgment or sentence is the only matter that can be inquired into, and mere errors or irregularities in the proceedings are not available.

2. *Same; same; judgment of recorder of city for violation of city ordinance.*—The judgment of a recorder of a city, sitting as a magistrate, and having jurisdiction conferred by law to try and dispose of a criminal charge, for the violation of city ordinances, is as conclusive, when jurisdiction has attached, as the adjudications of any other court, and no error in the proceedings before him, which did not affect his jurisdiction, will render the judgment void; and its validity cannot be assailed on petition for discharge under *habeas corpus* by parol evidence, and if the recorder, as such court, had jurisdiction, both of the subject matter and of the prisoner's person, the latter cannot be discharged on *habeas corpus.*

3. *Charter of the city of Montgomery; office of recorder judicially established.*—Under the charter of the city of Montgomery and the acts of the legislature amending the same, the office of recorder of said city is constitutionally established, and there is conferred upon such officer, jurisdiction to try and determine cases for the violation of the ordinances and by-laws of the city.

4. *Violation of city ordinance; imprisonment as punishment legal and not imprisonment for debt.*—The prosecution for the violation of a municipal ordinance, which is adopted as a matter

of internal police regulation, or for the maintenance of good order and government in a city, is a *quasi* criminal proceeding, and not a criminal action, and upon the person proceeded against being convicted, the imposition ot a fine or sentence to imprisonment or hard labor for the city cannot be construed to be imprisonment for debt; and this is true, although the ordinance violated was the failure to pay hack hire, as provided by ordinance of the city.

5. *Trial by jury; constitutional guarantee not infringed by trial by recorder for violation of municipal ordinance.*—The constitutional guarantee of a trial by jury in prosecutions by indictment, does not apply to a trial for the violation of a municipal ordinance; and such guarantee is not infringed by a person being tried before the recorder of a city for violation of one of its ordinances.

APPEAL from the City Court of Montgomery.
Heard before the Hon. A. D. SAYRE.
The proceedings in this case were had upon a petition being filed by the appellant, Jim Bray, addressed to Hon. A. D. Sayre, Judge of the City Court of Montgomery, seeking, by a writ of *habeas corpus*, to be discharged from imprisonment. The facts of the case are sufficiently stated in the opinion. The appeal is taken from an order of the Judge of the City Court remanding the petitioner to the custody of the chief of police of the city of Montgomery.

WARREN REESE, for petitioner.—The violation of a municipal ordinance is not a crime, for the reason that a city ordinance is not a public law of the State, but a local law, which is made for the convenience of the police and good government.—The common law definition of a crime as given by Blackstone; *Withers v. State*, 36 Ala. 261. See also *Greeley v. Hamman*, 12 Col. 96; *Camden v. Block*, 65 Ala. 236; *Williams v. Augusta*, 4 Ga. 512; *City of Goshan v. Croxton*, 34 Ind. 239, and Federal Constitution.

If it was a crime, then this defendant, both under the Federal and State Constitution, was entitled to a right to trial by jury, and it will not do to say that this right of trial was given him on appeal.—*Callen v. Wilson*, 127 U. S. 555, (32 L. C. P. C. 288); *Ex parte Kentucky*

[Bray v. The State.]

*v. Dennison,* 24 How. 66; *Ex parte Long,* 87 Ala. 47.

The charter of the city of Montgomery, viz., 1892-3, under the which the city derives its authority for punishing this petitioner, is unconstitutional, in that the charter of the city of Montgomery, approved February 21, 1893, is not shown by the Journal of the Senate to have been signed by the president of the Senate in the presence of the Senate immediately after its title had been publicly read, and the fact of such signing entered upon the journal of the Senate, as is required by Section 27, Article IV of the Constitution of Alabama, 1875.—*Attorney-General v. Buckley,* 54 Ala. 613; Cooley's Const. Lim. p. 164 (5th ed.) Note.

There has been only two charters granted to the city of Montgomery, viz., one on the 23d day of December, 1837, and the other on the 21st day of February, 1893, and therefore if the charter of 1893 is unconstitutional, all of the authority of the city of Montgomery derived to enforce its ordinances, civil, criminal, *quasi* criminal or otherwise, must be derived from the charter of 1837, and the amendatory acts thereof. We say that every section amending the charter of 1837 as applicable to this case, which was passed subsequent to the 30th day of September, 1865, is unconstitutional, and consequently of no force and effect for the reason we contend they are contrary to Section 2, Article IV of the Constitutions of 1865, 1868 and 1875, in this, that all of these amendments as embodied in the amendments to the various charters contained more than one subject, and the same is not described clearly or otherwise in its title, and not referable and cognate to the subject expressed, and in many cases the law was revised and amended by referring only to its title and number, and the new act did not contain the entire act revised, nor the section or sections desired to be amended, but simply stated its title, "To amend the charter of the city of Montgomery and the various acts amendatory thereof."—*Woolf v. Taylor,* 98 Ala. 257; *Ballentyne v .Wickersham,* 75 Ala. 536.

RAY RUSHTON, *contra.*—The petition having been presented to the Hon. A. D. Sayre as Judge of the city court

[Bray v. The State.]

of Montgomery, and addressed to him as an officer and magistrate, the conclusive presumption is that petitioner resorted to the statutory proceedings of *habeas corpus.* Code, §§ 4812 to 4853; *Kirby v. State,* 62 Ala. 51.

It is settled by the adjudications of this court that, under our statutes, as at common law, the writ of *habeas corpus* is not a revisory remedy and cannot be made to answer the purpose of an appeal, *certiorari* or writ of error, and when the judgment or sentence of another court is set up in the return as a cause of the retention of petitioner, the jurisdiction of the court to render judgment or sentence is the only matter that can be inquired into, and mere errors or irregularities in the proceedings are not available. "Error or irregularity may exist, but if it exists it cannot be inquired into collaterally, it can not render void and annul the sentence and judgment a court of competent jurisdiction has pronounced." The judgment must be void, not merely voidable.—*Ex parte Simmons,* 62 Ala. 14; *Ex parte Hubbard,* 65 Ala. 473; *Ex parte Mollet,* 71 Ala. 371.; *Ex parte Bizzell,* 112 Ala. 210.

There is no office in the State of Alabama which has been more often and more repeatedly established by the legislature of Alabama, nor an officer whose jurisdiction has been so often defined.—See Acts 1837, p. 57; Acts 1869-70, p. 338; Acts 1871-2, p. 275; Acts 1880-81, p. 496; Acts 1882-3, p. 652; Acts 1884-85, p. 560; Acts 1888-89, p. 513; Acts 1890-91, p. 1103; Acts 1892-93, p. 368; Acts 1900-1, p. 964.

In section 5 of the original charter (Acts, 1837, p. 66), the city council of Montgomery was, among various other powers granted to it, authorized "to license and regulate carts, wagons, drays and such hacks and carriages running from one part of said city to another for hire." These, with various other police powers, were specially conferred and necessarily implied in all of the various acts of the legislature dealing with the city of Montgomery.

It is true that in the early history of the city it was only authorized to punish offenders by fines, but since the act of February 13, 1879 (Acts 1878-9, p. 374), the city

has had authority from the legislature of Alabama to enforce its ordinances not only by fines, but by fines or imprisonment, or hard labor upon the streets, and since the passage of this act, all of the acts dealing with the office of recorder of the city of Montgomery have contained such provisions.

As to whether or not a violation of the ordinance was a crime seems to be immaterial. We do not insist that it is a crime within the meaning of the guarantees of the constitution as to jury trial, indictments, etc., but we do insist that the city council of Montgomery have the authority to impose the punishment that was imposed. Acts of the legislature giving authority to punish in this way have been passed on by this court, and it has always been recognized that either fine or imprisonment or hard labor might be imposed, but on account of the reading of some of the acts, both could not be imposed.—*Ex parte City Council of Montgomery*, 79 Ala. 275; *Ex parte City Council of Montgomery*, 64 Ala. 463; *City Council v. Foster*, 54 Ala. 63; *Brown v. Mayor, etc.*, 23 Ala. 722; *Ex parte City Council of Anniston*, 84 Ala. 21.

To the same effect are :—*People v. Hanrahan*, 75 Mich. 611; *Hill v. Mayor*, 72 Ga. 314; *Oshosh v. Schwartz*, 55 Wis. 487; *Platteville v. Bell*, 43 Wis. 488; *State v. Smith*, 52 Wis. 134; *Chafin v. Waukesha*, 62 Wis. 463; *Baldwin v. Chicago*, 68 Ill. 418; *Ex parte Hollewell*, 74 Wis. 395; *McGear v. Woodruff*, 33 N. J. Law, 213; *Miller v. O'Riley*, 84 Ind. 168; *Hogan v. Mascontell*, 59 Ill. 137; Dillon on Municipal Corporations, § 432 and note.

It is now recognized that the law can regulate common carriers and other pursuits in which the public are interested. It is perfectly competent for the city council of Montgomery to fix the amount of hack fares, and to punish hackmen who charge more than the rate fixed by the ordinances. It is just as competent for the city council to provide that the citizen who rides in one of the hacks without paying should be punished. It certainly tends to the good order of any city to prevent frauds and cheats. It is in no sense imprisonment for debt.—*Ex parte John Hardy*, 68 Ala. 303; *Ex parte King*, 102 Ala.

[Bray v. The State.]

182; *Crosby's case,* 108 Ala. 498; *Stein's case,* 37 Ala. 123; *Blann's case,* 39 Ala. 353.

HARALSON, J.—The petition in this case was a statutory proceeding of *habeas corpus.* It was addressed and presented to the judge of the city court of Montgomery as an officer and magistrate.

The petition charged that the petitioner was imprisoned by the chief of police of the city of Montgomery, and the writ when granted by the judge was addressed to A. Gerald, chief of police of said city.

Section 4828 of the Code prescribes the form and contents of the return, in substance, that if made by a public officer in his official capacity, it may be done by him without verification, and must state plainly and unequivocally whether the party is in his custody or restrained, and if so, by what authority, and the cause thereof, setting out the same fully, together with a copy of the writ, warrant or other authority, if any.

Section 4832 provides for a traverse of the return, if the petitioner desires to question the correctness of the same. Unless traversed, therefore, if the petitioner moves to quash the return, it will be taken as true, and the question of illegal imprisonment will be tried, as a matter of law, on the facts stated in the petition.—*Ex parte Hunter,* 39 Ala. 560; 9 Encyc. Pl. & Pr. 1052, § 5.

The writ is not revisory, answering the purpose of an appeal, and will not lie to correct errors or irregularities in the judgment of courts of superior or inferior jurisdiction. To entitle the prisoner to the writ and discharge under such judgment, it must be, not merely voidable, but void for an excess of jurisdiction on the face of the proceedings. When, therefore, the judgment or sentence of another court is returned, as the cause of the prisoner's detention or imprisonment, the jurisdiction of the court to render that judgment is the only matter that can be inquired into, and mere irregularities or errors in the proceeding are not available.—*Ex parte Bizzell,* 112 Ala. 210.

The return of the chief of police showed, in substance, that, theretofore, the city council of Montgomery had

12

[Bray v. The State.]

passed ordinances, numbered 327, 1147 and 1176, which were set out in full; 327 establishing the rates allowed to be charged for public vehicles; 1147 providing that any person who refused to pay the owner or driver of any public vehicle, or any licensed surry, dray or wagon, the rate fixed by law, (section 327), for services rendered, must, on conviction, be fined not less than one, nor more than one hundred dollars; and section 1176 providing that on the conviction of any person for any violation of the by-laws or ordinances of the city of Montgomery, whether such ordinances provide a special punishment or not, "may be punished by fine or imprisonment, or by fine and imprisonment, or by hard labor upon the streets or public works of the city, either or all, etc., *provided* that no fine shall exceed one hundred dollars and no punishment or hard labor shall exceed six months."

Said return also set out, the affidavit of Charles Reeves, made before J. G. Thomas, sergeant of said city, duly charging that the defendant on or about the 10th of November, 1903, within the limits of said city, and within the police jurisdiction thereof, did refuse to pay the driver or owner of a public hack, for services rendered, the rate fixed by law, in violation of section 1147 of the City Code; that a warrant of arrest was duly issued thereon by the sergeant of police, addressed "To any lawful officer of the State," commanding that he forthwith arrest the defendant and bring him before the Recorder of the city of Montgomery.

It further appeared, that under said warrant, the defendant was duly arrested, carried before and tried by the Recorder, who after hearing the testimony in the cause, made an order therein, after staing the case and the charge against the defendant, that "The defendant appeared in open court in his own proper person, the cause was heard and the defendant found guilty and sentenced to hard labor for six months," which order was signed, "A. H. Arrington, Recorder."

The judge of the city court, on hearing the *habeas corpus* proceeding, entered the following order: "On examination of the return of A. Gerald, chief of police of the city of Montgomery, there being no evidence out-

side of it, the petitioner is remanded to the custody of
A. Gerald, chief of police as aforesaid, for the execution
of the sentence against him," which order was signed by
the judge as such.  It was also further ordered by said
judge, that the petitioner might be released, pending an
appeal to the Supreme Court on giving bond to the city
in the sum of $200.

Counsel for petitioner questions the legality of his im-
prisonment on the grounds, that the charter of the city
of Montgomery of 1893, (Acts, 1892-3, p. 368), which
provides for the election of a Recorder, and prescribing
his duties, was never constitutionally enacted, and,
therefore, that the judgment of conviction under which
the petitioner is imprisoned, was by one who had no au-
thority to try and punish him.. Conceding the Recorder
to have been a legally appointed officer, the imprison-
ment is further questioned on the grounds, that it was
imposed for the non-payment of a debt, forbidden by the
constitution, and the petitioner was tried and found
guilty by the Recorder alone, and was deprived of a trial
by jury.

Where the question of the constitutionality of a stat-
ute is distinctly presented, and is necessary to the de-
cision of the particular case, the courts do not hesitate
to decide the question; but upon such questions courts
do not enter, when the case before them can be deter-
mined on other grounds.—*Smith v. Speed,* 50 Ala. 277;
*Joiner v. Winston,* 68 Ala. 129; *Hill v. Tarver,* 130 Ala.
592.

The question of the illegal restraint of the liberty of
the petitioner may be determined on other grounds, than
the alleged unconstitutionality of the charter of said city,
and there is no necessity to enter upon a discussion of
that question.

The insistence is urged, that there are but two charters
granted to the city, those of 1837 and of 1893, and the
latter being unconstitutional, the former is without pro-
vision supportive of the acts of the Recorder.  But this
contention is without merit as will be shown.

Under the charter of 1837 the mayor and aldermen
were authorized to pass ordinances and by-laws and to

levy fines for their breach not exceeding $50, and were clothed with the powers and authority of justices of the peace. The Mayor was required to keep an office and hear and determine upon all causes for breach of the ordinances and by-laws of the city. This original act was amended at different times by different legislatures, from 1839 to 1868.

On March 3, 1870, (Acts, 1869-70, p. 338), an act was approved, entitled "An Act to amend the charter of the city of Montgomery, and the various laws theretofore passed amending the said charter." This act set out at length and in full, not only the act of 1837, incorporating the city, but each one of the acts passed in subsequent years thereto. After reciting these various acts, setting them out at length, the said act of 1870, sets out in lieu of said various acts, what purports on its face to be, and is in fact, a new charter for said city. It is a full and complete act within itself for that purpose. It is not subject in its enactment to any constitutional infirmity, so far as has been suggested or made to appear.

The Mayor and Aldermen were thereunder empowered to license and regulate wagons, carts, drays and hacks running from one part of the city to another for hire, and generally to pass such by-laws and ordinances, not contrary to the constitution and laws of the State, or of the United State, as said Mayor and Aldermen should from time to time deem necessary and proper, to carry into effect the true meaning and intent of the charter, and the same to enforce, alter and repeal. They were also empowered to lay such fines, not exceeding one hundred dollars, for breach of their laws and ordinances as they might deem proper and enforce and collect the same in such manner as they might prescribe by ordinance, by execution against the property of the offender, or by committing him to the jail of the city, as they might deem necessary or proper.

The 10th section of this act is practically the same as the 7th section of the act of 1837, and confers on the Mayor and Aldermen the powers and authority of justices of·the peace. The 26th section provides for appeals from the judgment rendered by the Mayor or Aldermen

to the first term of the circuit court of Montgomery county. The recorder's office was not yet established.

An act approved February 26, 1872, (Acts, 1871-2, p. 275) was enacted to amend sections 4, 6, 7, 9, 12 and 28 of the said act of March 3, 1870, which, like the latter act, set out in full said sections to be amended, and adopted others in lieu thereof. By this act no change was made in the provisions of the charter for the trial of offenses against the city ordinances.

By act approved March 1, 1881, (Acts, 1880-1, p. 494), "To amend an act entitled an act to amend the charter of the city of Montgomery, approved March 3, 1870," power was given the city council to appoint a Recorder, to be vested with and to exercise in said city, the power and authority in criminal and *quasi* criminal matters, and power and authority to hear and determine all cases for breaches of the by-laws or ordinances of said city, which by its charter were vested in the Mayor and Aldermen. On what ground this provision is sought to be condemned as unconstitutional, we are not advised. It certainly lay within the field of amendment, as being pertinent and cognate to the original act, and fully covered by its title.

By an act approved the 17th of February, 1885, (Acts. 1884-85, p. 560), entitled an act "To confer additional powers upon the corporate authorities of the city of Montgomery," it was provided that "The Mayor, Recorder, or Aldermen of said city of Montgomery, trying any person for any violation of any of the by-laws or ordinances of said city council, shall, upon the conviction of any person, have power to fine or to imprison or to fine and imprison him, or to sentence him to hard labor on the streets or public works of the city," etc.

Again, February 28, 1889, (Acts, 1888-89, p. 513), an act was approved "To amend the charter of the city of Montgomery and the various acts amendatory thereof," in which it was provided that the city council shall elect a Recorder, or Recorders, whose term of office shall be two years, etc.; whose duty it shall be to hear and determine all causes for the breach of the ordinances and by-laws of said city that might be brought before him, and

[Bray v. The State.]

be vested with and exercise in said city, and within the police jurisdiction thereof the jurisdiction by the act conferred in criminal and *quasi* criminal matters, to impose penalties prescribed by ordinance and the charter of the city and amendments thereto, for violations of the ordinances and by-laws of the city, and to have the power *ex officio* of a justice of the peace.

Still again, by an act entitled "An act to amend the charter of the city of Montgomery and the various acts amendatory thereof," approved February 18, 1891, (Acts, 1890-91, p. 1103), the legislature provided for the election by the city council of a Recorder or Recorders and giving him jurisdiction, on conviction of any person for violation of any by-law or ordinance of said city, to fine or imprison or to sentence him to labor on the streets or public works, etc.

The foregoing are the various acts of the legislature providing for the election of a Recorder of said city and defining his powers and duties, and it rarely occurs that an office has been so repeatedly established by the legislature, or one the jurisdiction of which has been oftener defined. In the enactment of these statutes, it does not appear that there was a departure from the constitutional requirement as to what must be expressed in the title, the provision in each instance being germane to the subject expressed. The fact that the sections to be amended were not set out in full, followed by the proposed amendment,—as was done in some instances,—was not, as insisted, important; it being sufficient merely to set out the law as amended.—*Montgomery v. State,* 107 Ala. 372; *Thomas v. State,* 124 Ala. 48.

Under these various acts, culminating in the said act of March 1, 1881, and without reference to the charter of 1892-3, and other acts amendatory thereof, the office of Recorder is well provided for.

The ordinance for the violation of which the petitioner was after trial imprisoned by the Recorder was not a common law crime, but an offense created by an ordinance adopted as a matter of internal police regulation, or one for the maintenance of good order and government of the city, clearly within the legislative authority of the

municipality to adopt.—*Ex parte Byrd,* 84 Ala. 19. A prosecution for the violation of a municipal ordinance, designed for the preservation of the public peace, the security of the person or property, or the protection of public morals, has been held frequently by this court to be a *quasi* criminal proceeding and not a civil action.—*City Council v. Foster,* 54 Ala. 63; *Furham v. Mayor,* 54 Ala. 263; *Dunn v. Court of County Revenues,* 85 Ala. 147.

The provision in the Declaration of Rights, "That no person shall be imprisoned for debt," is limited to contract liabilities. In *Lee v. State,* 75 Ala. 30, it was said "that fines, forfeitures, mulcts, damages for a wrong or tort, are not a debt within this clause of the constitution, * * * and when a citizen by his own misconduct exposes himself to the punitive powers of the law, the expense incident to his prosecution and conviction, each and all of these may result in subjecting the defaulter to a money liability. These are not debts incurred by contract *inter partes,* but are the result of being members of the social compact, or body politic."—*Ex parte Hardy,* 68 Ala. 303.

"Penalties are imposed in furtherance of some public policy, and as a means of securing obedience to law. Persons who incur these, are either in morals or law wrong doers, and not simply unfortunate debtors unable to perform their pecuniary obligations," to whom the constitutional provision against imprisonment for debt, does not apply.—*U. S. v. Webb,* 1 Abb. (U. S.) 71.

The prosecution was not for the purpose of coercing the payment of the hack hire. It could have resulted in no gain to the owner of the hack, but it was for the violation of an ordinance in which every citizen has the same interest.

The constitutional guarantee of a trial by jury in prosecutions by indictment does not apply to offenses of the character for which petitioner was tried and convicted. *Times v. State,* 26 Ala. 165; *State v. Buckley,* 54 Ala. 599; *Taliaferro v. Lee,* 97 Ala. 1; Dillon on Municipal Corporations, § 432 (361) n. v.

No error appearing, the judgment below is affirmed.