OPINION OF THE COURT
Stanley Gartenstein, J.
Defendant Jose L. is charged with the crime of consensual sodomy under section 130.38 of the Penal Law, a class B misdemeanor. He moves to dismiss the accusatory instrument (CPL 170.30, subd 1, par [a]; 170.35, subd 1, par [c]) based on his contention that this section is offensive to the equal *923 protection clauses of the Fourteenth Amendment of the United States Constitution and section 11 of article I of the New York Constitution and hence unconstitutional on its face.
In litigating the instant motion, defendant in essence concedes arguendo the factual allegations against him to the effect that he committed a specified act of consensual sodomy with a person to whom he was not married. He argues, however, that this prosecution for consensual sodomy under section 130.38 of the Penal Law violates his constitutionally protected right to equal protection of the law.
THE FACTS
On November 25, 1978, Police Officers Franzese and Zangino of the 9th Precinct were on routine patrol. At approximately 1:45 a.m., they spotted a commercial van parked on the side of the roadway at the intersection of 12th Street and 3rd Avenue in Manhattan. Their interest was piqued by the fact that it was parked at an odd angle with one rear wheel having jumped the curb. The officers approached the van, looked through the rear window and observed a female performing fellatio upon the defendant. Upon being apprised that he was being observed by police officers, the mortified defendant attempted to leave the scene by hastily starting the van. His attempted escape was aborted by the officers who placed him under arrest on a charge of consensual sodomy. The somewhat less perturbed female participant was also arrested and charged with prostitution.
JURISDICTIONAL STATUTES
Under section 130.38 of the Penal Law, "[a] person is guilty of consensual sodomy when he engages in deviate sexual intercourse with another person.” The term "deviate sexual intercourse” is defined in subdivision 2 of section 130.00 of the Penal Law as "sexual conduct between persons not married to each other consisting of contact between the penis and the anus, the mouth and the penis, or the mouth and the vulva.”
Defendant contends that although it is within a State’s police powers to proscribe acts of consensual sodomy for all persons, criminalization thereof solely for those not married to each other is violative of his right to equal protection of the law, since no valid State interest is demonstrated supportive of this differentiation in treatment.
*924 PRESUMPTION OF CONSTITUTIONALITY
Initially, the court notes a strong presumption of constitutionality which attaches to enactments of the Legislature (People v Pagnotta, 25 NY2d 333; Matter of Van Berkel v Power, 16 NY2d 37; People v Venable, 37 NY2d 100). A challenge to constitutionality must shoulder the heavy burden of rebutting this presumption beyond a reasonable doubt (People v Parker, 41 NY2d 21; People v Scott, 26 NY2d 286; Fenster v Leary, 20 NY2d 309; Matter of Van Berkel v Power, supra).
It is inappropriate for a court of original jurisdiction to strike down a statute unless its infirmity is patent and inescapable. Moreover, it must be demonstrated that a constitutional interpretation thereof is not possible (Bohling v Corsi, 204 Misc 778, affd 306 NY 815, app dsmd 348 US 802; Farrall v Bragalini, 11 Misc 2d 1075, app dsmd 4 NY2d 1030).
CONSTITUTIONAL ATTACK
Defendant contends that section 130.38 of the Penal Law must be struck down inasmuch as its exemption of married persons who engage in consensual sodomy with each other from prosecution thereunder results in denial of equal protection of the law to unmarried consensual sodomites.
In support of this contention, defendant relies on Supreme Court rulings in Griswold v Connecticut (381 US 479) and Eisenstadt v Baird (405 US 438). Griswold (supra, p 499) by its own terms protected sexual privacy as an adjunct of the marital relationship, Justice Goldberg in his concurring opinion stated: "’it is one thing when the State exerts its power * * * to forbid extra-marital sexuality * * * but is quite another when, having acknowledged a marriage and the intimacies inherent in it, it undertakes to regulate by means of the criminal law the details of that intimacy.’” In Eisenstadt v Baird (supra, pp 454-455) the Supreme Court struck down a Massachusetts statute prohibiting distribution of contraceptives to unmarried persons for any purpose other than prevention of disease while permitting such distribution to married persons. "We hold” wrote Mr. Justice Brennan for the court, "that by providing dissimilar treatment for married and unmarried persons who are similarly situated, Massachusetts General Law Ann. c. 272 secs. 21 and 21 A, violate the Equal Protection Clause”.
*925 Defendant now claims that a reading of Griswold (supra) and Eisenstadt (supra) together will yield an implied extension of the sexual privacy argument to unmarried persons as well inasmuch as the Supreme Court’s ruling in Eisenstadt (supra) refused to recognize the act of marriage as a valid basis for classification. We disagree.
The precise argument made by defendant herein was categorically rejected in People v Rice (87 Misc 2d 257, 258, affd 41 NY2d 1018) as follows: "States have always had the right and power to regulate sexual conduct in order to promote the health, safety and morals of their inhabitants, and while the statute in question could have prohibited consensual sodomy in its entirety, it merely included within the definition of 'deviate sexual intercourse’ the exception which would have been required in any case under the decision in Griswold v Connecticut (381 US 479). Eisenstadt v Baird (405 US 438) does not require any extension of the right to privacy to unmarried couples regarding the issue of sodomy. Eisenstadt merely extended the right of an unmarried person to have contraceptives made available to her based on her fundamental right to decide whether to bear or beget a child. No case has been reported or cited by defendant which would recognize a fundamental right to commit consensual sodomy. The only exception to the New York statute has been mandated by the Griswold decision based on the privacy attached to the marital relationship. Without this requisite based, to wit: marriage, there can be no exception under the rationale of Griswold. ”*
On appeal to the Court of Appeals the high court found itself in the position of affirming the remand of the Appellate Term only because of the inadequate record on appeal. Nevertheless, by way of dictum, the court expressed reservations as to the validity of this statute centering on recently evolved constitutional limitations upon a State’s power to intrude on private consensual sexual activity whether by married or unmarried persons. The court noted that prosecution for consensual sodomy involved "questions of conduct traditionally treated as criminal and yet, when committed privately and circumspectly, suggestive of an unwarranted interference *926 by the State with the lately recognized and inchoate 'penumbral’ right of privacy (see, e. g., Griswold v Connecticut, 381 US 479, 484-485; Stanley v Georgia, 394 US 557, 564-568.” (People v Rice, 41 NY2d, at p 1018; emphasis supplied.)
The underscored language of this dictum is suggestive of a principle that only where consensual sodomites engage in their activity in private after taking due precautions to shield their conduct from public view, is there any valid basis to find a possible constitutional infirmity in a statute proscribing such conduct. In this vein, the court notes Matter of Labady (326 F Supp 924) and Matter of Schmidt (56 Misc 2d 456) which construed section 130.38 of the Penal Law restrictively as inapplicable to acts of consensual sodomy performed by adults in private. Unfortunately, support for such a narrow interpretation is lacking in its statutory history (see NY Legis Ann, 1965, pp 51-52). Moreover, a court must construe a statute as written and not legislate judicially what is not there in efforts to save its constitutionality. It is clear that "[w]hen, however, the language of a statute clearly requires a certain construction it must be so construed, though this renders it unconstitutional.” (McKinney’s Cons Laws of NY, Book 2, Constitution, § 43.)
In the long run it is clear that no one is as yet at the stage where prediction of the Supreme Court’s ultimate attitude on this question may be hazarded. The court itself has stated that it "has not definitely answered the difficult question whether and to what extent the Constitution prohibits state statutes regulating [private consensual sexual] behavior among adults”. (Carey v Population Servs. Int., 431 US 678, 688, n 5; 694, n 17.) Manifestly, no doubt is left that whatever the as yet undefined contours of the right to engage in consensual sexual acts free from government interference may ultimately be, an essential prerequisite for constitutional protection of such acts is that they be performed in private. Additionally, it is to be noted that the court has affirmed the convictions of males for performing consensual homosexual sodomous acts in private (as distinguished from the heterosexual acts at issue herein) that were violative of a State sodomy statute. (See, e.g., Doe v Commonwealth’s Attorney for City of Richmond, 403 F Supp 1199, affd without opn 425 US 901.) This attitude further clouds the picture and makes prognostication of ultimate Supreme Court attitudes even more hazardous.
In assessing the ultimate attitude of the Court of Appeals *927 on these questions, it would be wise to bear in mind, first, that the statement of its inclinations in Rice (87 Misc 2d 257, supra) is dictum and not binding; and second, that even were this part of the actual holding, its application would be limited by its own terms to acts performed in private. In so limiting its statement the Court of Appeals was clearly exercising that same restraint mandated upon lower courts to restrict holdings on constitutional issues to the narrowest lowest common denominator. Certainly, this nonbinding dictum restricted by its own terms to acts performed in private has no application here.
In view of the fact that defendant allegedly performed the act of consensual sodomy in question in a van parked on a public street and open to public view he cannot claim constitutional protection for his act. (See, also, Lovisi v Slayton, 363 F Supp 620, 626, in which the court found constitutional protections attendant upon the right of privacy to extend to intimate sexual relations between consenting adults, only if performed under secluded conditions.) We thus find nothing either under New York law or under Supreme Court cases which might suggest of a denial of equal protection were the defendant prosecuted under this statute.
Finally, in view of our holding rejecting the challenge to the statute, we feel it in order to point out that a finding of constitutionality does not imply a finding of legislative wisdom. In point of fact, that this statute is archaic was a consideration in the minds of the Legislature which enacted the 1965 amendment thereto. The circular reasoning under which the Legislature acted is recounted by Dean (then Assemblyman) Richard J. Bartlett (NY Legis Ann, 1965, p 51), "Although the main bill defines and penalizes 'sodomy’ committed by force or intimidation, or with children, incompetents, etc., it does not attach criminal sanctions to the consensual adult conduct in question. The Commission’s reasons for omitting this phase of the crime of sodomy were similar to its reasons for omitting adultery. It was of the opinion that this infrequently prosecuted offense involves a manifestation of illness rather than of criminal culpability and should be regarded as an illness rather than a crime. It may be noted that such conduct, when performed in a public place, is punishable under other provisions of the Proposed Penal Law, (§§ 240.35 [3], 245.00). It would appear that the Legislature’s decision to restore the consensual sodomy offense was, as with *928 adultery, based largely upon the premise that deletion thereof might ostensibly be construed as legislative approval of deviate conduct.”
It might be hoped that we in this State have come a long way in the 15 years since this legislative failure of courage described by Dean Bartlett.
Motion denied.

 Although the defendants in Rice (87 Misc 2d 257, supra) were two pairs of consenting male sodomites, the court’s reasoning in rejecting the equal protection challenge therein applies equally to the present case involving a male-female consensual sodomous act (see Ann., 58 ALR3d 636).