JOINER, Judge.
Pursuant to a plea agreement with the State, Kenneth Robert Crawford, a convicted sex offender, pleaded guilty to establishing a residence or other living accommodation where a minor resides, a violation of § 15-20-26(c), Ala.Code 1975, a part of the Community Notification Act, § 15-20-20 et seq., Ala.Code 1975 (“the CNA”). The circuit court sentenced Crawford to two years in prison but suspended that sentence and placed him on three years’ probation. Additionally, the circuit court ordered Crawford to pay a $100 victims compensation assessment.
The facts are undisputed. In 1998, Crawford was convicted of second-degree sodomy, in which his minor child was the victim; he is therefore subject to the residency requirements of the CNA. § 15-20-26, Ala. Code 1975. In August 2009, Crawford moved in with his son, his son’s wife, and his two minor grandchildren.[1] When Crawford attempted to register his new address with the Jefferson County Sheriffs Department, he was told that he could not live with his son because doing so violated the restrictions of the CNA. Crawford lived with his son’s family from August 16, 2009, to October 16, 2009. In April 2010, Crawford was indicted by the Jefferson County Grand Jury for violating the CNA. After he was indicted, Crawford filed a verified motion to dismiss the indictment, which the circuit court denied. After the motion was denied, Crawford expressly reserved his right to appeal the issues raised in his verified motion to dismiss, and he pleaded guilty. This appeal followed.
On appeal, Crawford contends that the residency restrictions in § 15-20-26(c), Ala.Code 1975, are unconstitutional. Specifically, Crawford contends that the CNA violates the protections of the Due Process Clause of the United States Constitution as applied to the states through the Fourteenth Amendment and that the CNA is an ex post facto law that violates Article I, § 10, of the United States Constitution.
I.
Crawford argues that § 15-20-26(c) is unconstitutional because, he says, it violates the protections of the Due Process Clause as applied to the states through the Fourteenth Amendment to the United States Constitution. The Fourteenth Amendment to the United States Constitution provides, in part: “[N]or shall any State deprive any person of life, liberty, or property, without due process of law.” The Due Process Clause both guarantees fair process and includes a substantive component that “ ‘provides heightened protection against government interference with certain fundamental rights and liberty interests.’” Troxel v. Granville, 530 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000) (quoting Washington v. Gluchsberg, 521 U.S. 702, 720, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997)). Here, Crawford challenges the CNA under both the procedural and substantive components of the Due Process Clause.
When the constitutionality of a statute is challenged,
“‘[w]e must afford the Legislature the highest degree of deference, and construe its acts as constitutional if their *171 language so permits.’ Monroe v. Harco, Inc., 762 So.2d 828, 831 (Ala.2000). ‘[I]n order to overcome the presumption of constitutionality ... the party asserting the unconstitutionality of the [statute], bears the burden “to show that [the statute] is not constitutional.” ’ State ex rel. King v. Morton, 955 So.2d 1012, 1017 (Ala.2006) (quoting Board of Trs. of Employees’ Retirement Sys. v. Talley, 291 Ala. 307, 310, 280 So.2d 553, 556 (1973)).”
State v. Adams, 91 So.3d 724, 732 (Ala. Crim.App.2010).
A.
Crawford first argues that § 15-20-26(c), Ala.Code 1975, violates the procedural component of the Due Process Clause because the statute provides no mechanism for a convicted sex offender to petition the court for an exemption from the restrictions imposed by the CNA. The procedural component of the Due Process Clause guarantees that a state will not deprive a person of life, liberty, or property without some form of notice and an opportunity to be heard. See Hamdi v. Rumsfeld, 542 U.S. 507, 124 S.Ct. 2633, 159 L.Ed.2d 578 (2004). To prevail on a procedural-due-process claim, Crawford must show that the CNA deprives him of a protected liberty interest and that the procedure accompanying the deprivation is constitutionally inadequate. Kentucky Dep’t of Corr. v. Thompson, 490 U.S. 454, 460, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989).
 Here, Crawford argues that the CNA deprives him of the right of familial association because, he says, as a convicted sex offender it precludes him from living with his son, his minor grandchildren, and his daughter-in-law or with his wife and her daughter. The United States Supreme Court has recognized several different liberty interests implicit in the Due Process Clause. Glucksberg, 521 U.S. at 720. These liberty interests include “the right to marry, to have children, to direct the education and upbringing of one’s children, to marital privacy, to use contraception, to bodily integrity, and to abortion.” Glucksberg, 521 U.S. at 720. In Roberts v. United States Jaycees, 468 U.S. 609, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984), the United States Supreme Court held:
“The Court has long recognized that, because the Bill of Rights is designed to secure individual liberty, it must afford the formation and preservation of certain kinds of highly personal relationships a substantial measure of sanctuary from unjustified interference by the State. E.g., Pierce v. Society of Sisters, 268 U.S. 510, 534-535 (1925); Meyer v. Nebraska, 262 U.S. 390, 399 (1923)....
“The personal affiliations that exemplify these considerations,' and that therefore suggest some relevant limitations on the relationships that might be entitled to this sort of constitutional protection, are those that attend the creation and sustenance of a family-marriage, e.g., Zablocki v. Redhail, [434 U.S. 374, 383-86 (1978)]; childbirth, e.g., Carey v. Population Services International, [431 U.S. 678, 684-86 (1977) ]; the raising and education of children, e.g., Smith v. Organization of Foster Families, [431 U.S. 816, 844 (1977)]; and cohabitation with one’s relatives, e.g., Moore v. East Cleveland, [431 U.S. 494, 503-04 (1977) (plurality opinion) ]. Family relationships, by their nature, involve deep attachments and commit- *172 merits to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctively personal aspects of one’s life. Among other things, therefore, they are distinguished by such attributes as relative smallness, a high degree of selectivity in decisions to begin and maintain the affiliation, and seclusion from others in critical aspects of the relationship. As a general matter, only relationships with these sorts of qualities are likely to reflect the considerations that have led to an understanding of freedom of association as an intrinsic element of personal liberty.”
Roberts, 468 U.S. at 619-20. Thus, the right to enter into and maintain certain familial associations is a protected liberty interest. As such the State cannot impede one’s ability to associate with one’s family without due process of law.
Because Crawford satisfies the first prong-of the procedural due-process analysis, we must now determine whether the procedure accompanying the deprivation of his liberty interest was constitutionally adequate. To support his procedural due-process argument, Crawford cites this Court’s ruling in J.L.N. v. State, 894 So.2d 738 (Ala.Crim.App.2002).
In J.L.N. the defendant had been previously convicted of second-degree rape; the victim was his 15-year-old girlfriend. After the defendant was released on probation, his victim and the victim’s mother moved into the defendant’s house. The defendant was indicted for a violation of the CNA and filed an unverified motion to dismiss the indictment because he intended to marry the victim. The circuit court denied the defendant’s motion, and he pleaded guilty. The defendant argued that the CNA was unconstitutional because, he said, it was overbroad and violated both his procedural and substantive due-process rights; specifically, he said, it violated his right to intimate association with family members and the right to marital privacy. In holding that the CNA interfered directly and substantially with the defendant’s right to marry, this Court stated that
“the problem with the CNA, at least in the context of this case, is that it contains no exemption — and no procedure by which a convicted sex offender can petition the court for an exemption— from the restrictions imposed by the statute and the corresponding severe punitive consequences for noncompli-anee. In this respect, the CNA is arbitrarily broad, because its practical effect is to create a conclusive presumption that there are no circumstances under which it might be appropriate for a convicted sex offender to interact with his victim — a presumption belied by the particular facts of this case. Contrary to the Legislature’s reference in the last paragraph of § 15-20-20.1 to providing ‘certain discretion to judges for application of these requirements,’ the CNA provides no means for an individualized determination by a court in those rare instances, such as this one, where a convicted sex offender and his victim wish to marry. Such irrebuttable presumptions have long been disfavored under the Due Process Clause. See, e.g., Cleveland Bd. of Educ. v. LaFleur, 414 U.S. 632, 640, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974).”
J.L.N., 894 So.2d at 749. Although Crawford recognizes that the Alabama Supreme Court reversed the Court’s decision in J.L.N. v. State, 894 So.2d 751 (Ala.2004) (holding that J.L.N. lacked standing to challenge the CNA), he contends that this *173 Court’s analysis in J.L.N. is applicable to his case.[2] We disagree.
After this Court decided J.L.N., the Supreme Court of the United States addressed a similar issue with regard to a procedural due-process challenge to a community-notification statute. See Connecticut Dep’t of Pub. Safety v. Doe, 538 U.S. 1, 123 S.Ct. 1160, 155 L.Ed.2d 98 (2003).
In Doe, a convicted sex offender argued that Connecticut’s version of the CNA was unconstitutional because, he said, it did not provide for a hearing to determine whether a sex offender was particularly likely to be currently dangerous before being labeled so by his inclusion in a publicly disseminated registry. Doe, 538 U.S. at 7. The Supreme Court held that the fact that the convicted sex offender “seeks to prove — that he is not currently dangerous — is of no consequence under the [Connecticut law],” because “the law’s requirements turn on an offender’s conviction alone — a fact that a convicted offender has already had a procedurally safeguarded opportunity to contest.” Doe, 538 U.S. at 7.
Similarly, Crawford argues that he should be afforded the opportunity to petition the court to determine whether he should be excluded from the restrictions of the CNA before the State can preclude him from living with certain family members. Crawford’s argument, however, is of no consequence under the CNA, because the restrictions of the statute turn on his conviction alone. Thus, any procedural due process required before deprivation of life, liberty, or property was met through the original proceedings that resulted in his conviction.
Accordingly, the restrictions contained in § 15-20-26(e), Ala.Code 1975, do not ■violate the procedural component of the Due Process Clause.
B.
Crawford also argues that the restrictions contained in § 15-20-26(c), Ala. Code 1975, violate the substantive component of the Due Process Clause because, he says, the residency restrictions impede a fundamental right and are not narrowly tailored to meet a compelling state interest. Specifically, Crawford contends that, as a convicted sex offender, he is prevented by the CNA from living with his son, his two minor grandchildren, his daughter-in-law or his wife and her daughter.
The substantive component of the Due Process Clause protects fundamental rights that are so “implicit in the concept of ordered liberty” that “neither liberty nor justice would exist if they were sacrificed.” See Pallco v. Connecticut, 302 U.S. 319, 325-26, 58 S.Ct. 149, 82 L.Ed. 288 (1937). Fundamental rights protected by substantive due process are protected from certain state actions regardless of the procedures the state has in place. Glucks-berg, 521 U.S. at 721. When a state enacts legislation that infringes upon a fundamental right, courts review the law under a strict-scrutiny analysis and uphold it only when it is “narrowly tailored to serve a *174 compelling state interest.” Reno v. Flores, 507 U.S. 292, 302, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993). The United States Supreme Court has recognized several different liberty interests that are implicit in the Due Process Clause. Glucksberg, 521 U.S. at 720. These liberty interests include “the right to marry, to have children, to direct the education and upbringing of one’s children, to marital privacy, to use contraception, to bodily integrity, and to abortion.” Glucksberg, 521 U.S. at 720. The Supreme Court, however, has stated its reluctance to expand substantive due process by recognizing new fundamental rights:
“[W]e ‘have always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended.’ By extending constitutional protection to an asserted right or liberty interest, we, to a great extent, place the matter outside the arena of public debate and legislative action. We must therefore ‘exercise the utmost care whenever we are asked to break new ground in this field,’ lest the liberty protected by the Due Process Clause be subtly transformed into the policy preferences of the members of this Court.”
Glucksberg, 521 U.S. at 720 (citations omitted). Thus, the substantive due-process analysis must first begin with a careful description of the asserted right. Flores, 507 U.S. at 302. Second, we must determine whether the asserted right is “one of ‘those fundamental rights and liberties which are, objectively, deeply rooted in this Nation’s history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed.’ ” Williams v. Attorney Gen. of Alabama, 378 F.3d 1232, 1239 (11th Cir.2004) (quoting Glucksberg, 521 U.S. at 720-21), cert. denied, Williams v. King, 543 U.S. 1152, 125 S.Ct. 1335,161 L.Ed.2d 115 (2005).
Here, Crawford contends that the CNA interferes with his right to enter into and to maintain certain familial relationships because, he says, § 15-20-26(e), Ala.Code 1975, prevents him from residing with his son, his minor grandchildren, and his daughter-in-law or his wife and her daughter.
As discussed above, the right to make choices concerning family-living arrangements is a fundamental right that is deeply rooted in this Nation’s history and tradition. See Moore v. City of East Cleveland, 431 U.S. 494, 499, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977) (“A host of cases ... have consistently acknowledged a ‘private realm of family life which the state cannot enter’ ” and “when the government intrudes on choices concerning family living arrangements, this Court must examine carefully the importance of the governmental interests advanced and the extent to which they are served by the challenged regulation.” (citations omitted)). Thus, the asserted right here — the right to associate with one’s family — is a fundamental right, and this Court must apply a strict-scrutiny analysis to determine whether the CNA is narrowly tailored to serve a compelling state interest. See Herring v. State, [Ms. CR-10-0019, May 27, 2011] — So.3d(Ala. Crim.App.2011).
Under the strict-scrutiny analysis, we begin by determining what interest the State has in impeding the asserted right. Specifically, here, we must determine what interest the State has in prohibiting an adult criminal sex offender from residing with his children, grandchildren, and stepchildren when the offender has been con *175 victed of any criminal sexual offense in which any of his minor children, grandchildren, or stepchildren was the victim; or has been convicted of any criminal sexual offense in which a minor was the victim and the minor resided or lived with the offender at the time of the offense; or has been convicted of any criminal sexual offense involving a child, regardless of whether the offender was related to or shared a residence with the child victim. At issue here is § 15-20-26(c), Ala.Code 1975, which provides:
“(c) No adult criminal sex offender shall establish a residence or any other living accommodation where a minor resides. Notwithstanding the foregoing, an adult criminal sex offender may reside with a minor if the adult criminal sex offender is the parent, grandparent, or stepparent of the minor, unless one of the following conditions applies:
“(1) The adult criminal sex offender’s parental rights have been or are in the process of being terminated as provided by law.
“(2) The adult criminal sex offender has been convicted of any criminal sex offense in which any of the offender’s minor children, grandchildren, or stepchildren were the victim.
“(3) The adult criminal sex offender has been convicted of any criminal sex offense in which a minor was the victim and the minor resided or lived with the offender at the time of the offense.
“(4) The adult criminal sex offender has ever been convicted of any criminal sex offense involving a child, regardless of whether the offender was related to or shared a residence with the child victim.”
In Herring, this Court addressed the State’s compelling interest behind § 15-20-26(c), Ala.Code 1975, and held that “ ‘the State has a compelling interest in protecting its children from harm.’ ” Herring, — So.3d at — (quoting Ex parte 62 So.3d 531, 536 (Ala.Civ.App.2010)).[3]
Because the State has a compelling interest in protecting the public, especially children, from recidivist sex offenders, we must now determine whether the CNA is narrowly tailored to meet that interest. In Herring, this Court addressed this issue and held that § 15-20-26(c), Ala.Code 1975, does not
“provide for a ‘blanket prohibition’ against sex offenders living with minors. Rather § 15-20-26(c), Ala.Code 1975, specifically allows sex offenders to live with their children, stepchildren, or grandchildren, and §§ 15-20-26(c)(3) and (c)(4), Ala.Code 1975, prohibit only a subset of sex offenders from doing so. That subset includes only those offenders who have offended against a child under the age of 12 or a minor who was residing with the offender at the time of the offense. Given the high rate of recidivism among sex offenders and the *176 limited subset of sex offenders to which §§ 15-20-26(c)(3) and (c)(4), Ala.Code 1975, apply, §§ 15-20-26(c)(3) and (c)(4), Ala.Code 1975, are clearly narrowly tailored to protect children only from those sex offenders who pose the highest risk to them, i.e., those who have demonstrated an obvious preference for minors who are in the closest, easiest, and most vulnerable positions when residing with the offender.”
Herring, — So.3d at — (citations omitted).
Because § 15-20-26(c), Ala.Code 1975, is narrowly tailored to meet a compelling State interest it does not violate the substantive component of the Due Process Clause.
II.
Crawford next argues that the CNA violates the prohibition against ex post facto laws contained in Article I, § 10, of the United States Constitution, which states, in pertinent part: “No State shall ... pass any ... ex post facto law.” This Court has previously upheld the CNA against ex post facto challenges. See, e.g., Lee v. State, 895 So.2d 1038 (Ala.Crim.App.2004); Boyd v. State, 960 So.2d 717, 720 (Ala.Crim.App.2006).
Although Crawford recognizes this Court’s holding in Lee, he contends that this Court has not addressed the ex post facto clause since the CNA was amended in 2005, when, he says, “substantial changes” were made to the CNA. (Crawford’s brief, p. 33). Crawford contends in his brief that in 2005 the legislature made the following changes to the CNA:
“[T]he legislature increased the classification of a violation of the act from a Class A misdemeanor to a Class C felony; added the term ‘or any other living accommodation’ as an additional prohibition to establishing a residence, and included the language ‘or if any child was a previous victim’ to those circumstances under which a parent, grandparent, or stepparent may not live with his/her own children, grandchildren or stepchildren. The Amendments further changed the definition of establishing a residence to include a stay of ‘10 or more aggregate days’ ‘in a calendar month.’ ”
(Crawford’s brief, pp. 33-34).
The only substantive change to § 15-26-20(c), Ala.Code 1975, by the legislature in 2005, however, was to the following subdivisions:
“(2) The adult criminal sex offender has been convicted of any criminal sex offense in which any of the offender’s minor children, grandchildren, or stepchildren were the victim.
“(3) The adult criminal sex offender has been convicted of any criminal sex offense in which a minor was the victim and the minor resided or lived with the offender at the time of the offense.
“(4) The adult criminal sex offender has ever been convicted of any criminal sex offense involving a child, regardless of whether the offender was related to or shared a residence with the child victim.”
Act No. 2005-301, Ala. Acts 2005. In 2005, the legislature rewrote subdivisions (2) and (3) and added subdivision (4). Contrary to Crawford’s contention, violations of § 15-20-26(c), Ala.Code 1975, have been classified as a Class C felony since the section became effective on September 1, 1999. See Act No. 1999-572, Ala. Acts 1999.
This Court first addressed the issue of the ex post facto clause as it applies to the CNA in Lee:
“Turning to Lee’s argument that the residency requirement of the CNA is retroactive and punitive in violation of *177 the ex post facto clause, we find guidance in our determination of the merits of his argument in a recent United States Supreme Court case, Smith v. Doe, 538 U.S. 84, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003), in which the Court held that the Alaska Sex Offender Registration Act was not unconstitutional and not violative of the ex post facto clause. Although certainly Alabama’s CNA differs from Alaska’s legislation, we nonetheless apply the following governing principles of law gleaned from Smith to this case:
“‘This is the first time we have considered a claim that a sex offender registration and notification law constitutes retroactive punishment forbidden by the Ex Post Facto Clause. The framework for our inquiry, however, is well established. We must “ascertain whether the legislature meant the statute to establish ‘civil’ proceedings.” Kansas v. Hendricks, 521 U.S. 346, 361 (1997). If the intention of the legislature was to impose punishment, that ends the inquiry. If, however, the intention was to enact a regulatory scheme that is civil and nonpunitive, we must further examine whether the statutory scheme is “ ‘so punitive either in purpose or effect as to negate [the State’s] intention’ to deem it ‘civil.’ ” Ibid, (quoting United States v. Ward, 448 U.S. 242, 248-249 (1980)). Because we “ordinarily defer to the legislature’s stated intent,” Hendricks, supra, at 361, “‘only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty,” Hudson v. United States, 522 U.S. 93, 100 (1997) (quoting Ward, supra, at 249; see also Hendricks, supra, at 361; United States v. Ursery, 518 U.S. 267, 290 (1996); United States v. One Assortment of 89 Firearms, 465 U.S. 354, 365 (1984)).
“‘A.
“ ‘Whether a statutory scheme is civil or criminal “is first of all a question of statutory construction.” Hendricks, supra, at 361 (internal quotation marks omitted); see also Hudson, supra, at 99. We consider the statute’s text and its structure to determine the legislative objective. Flemming v. Nestor, 363 U.S. 603, 617 [ (1960) ]. A conclusion that the legislature intended to punish would satisfy an ex post facto challenge without further inquiry into its effects, so considerable deference must be accorded to the intent as the legislature has stated it.
“ ‘The courts “must first ask whether the legislature, in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other.” Hudson, supra, at 99 (internal quotation marks omitted).’
“538 U.S. at 92-93, 123 S.Ct. 1140.
“Here, in creating the residency requirement of the CNA, the Alabama Legislature did not expressly indicate a preference to label the statute punitive. Rather, the Legislature found that the public was in danger from sex offenders because of the high recidivism rate among such offenders. The Legislature also determined that, because of such danger, certain vulnerable segments of the population should be afforded extra protection from sex offenders[;] thus the requirement that sex offenders live some distance from schools and child care facilities. The Legislature conclud *178 ed that requiring sex offenders to live some distance from schools and child care facilities worked to assist local law enforcement agencies in their efforts to protect their communities. Therefore, from the face of the statute, we can determine that the Legislature intended to create a civil scheme designed to protect the citizens of Alabama and their children from harm, as ‘ “[n]othing on the face of the statute suggests that the legislature sought to create anything other than a civil ... scheme designed to protect the public from harm.” [Kansas v. Hendricks, 521 U.S. 346, 361 (1997).]’ Smith, 538 U.S. at 93, 123 S.Ct. 1140.
“We also note, as the Court did in Smith, that although the statute in question is found in the Criminal Code, such placement is not dispositive of the question of whether the legislative intent in enacting the residency requirement of the CNA was punitive. Rather, ‘[t]he location and labels of a statutory provision do not by themselves transform a civil remedy into a criminal one.’ 538 U.S. at 94, 123 S.Ct. 1140. The criminal section of the Alabama Code contains numerous provisions that do not involve criminal punishment, including provisions involving jurisdiction and venue, searches and seizures, victims’ rights, preliminary hearings, etc. Therefore, we do not hold the codification of the Act in the Criminal Code as ‘sufficient to support a conclusion that the legislative intent was punitive.’ 538 U.S. at 95, 123 S.Ct. 1140.
“Because we conclude that the intent of the Alabama Legislature in promulgating the residency requirement of the CNA was to create a civil, nonpunitive legislative scheme, we must now determine whether the statute is so punitive in effect as to negate the legislature’s intent.
“ ‘In analyzing the effects of the Act we refer to the seven factors noted in Kennedy v. Mendoza-Martinez, 372 U.S. 144, 168-169 (1963), as a useful framework. These factors, which migrated into our ex post facto case law from double jeopardy jurisprudence, have their earlier origins in cases under the Sixth and Eighth Amendments, as well as the Bill of Attainder and the Ex Post Facto Clauses. See id., at 168-169, and nn. 22-28. Because the Mendoza-Martinez factors are designed to apply in various constitutional contexts, we have said they are “neither exhaustive nor dispositive,” United States v. Ward, 448 U.S. [242], at 249 [ (1980) ]; [United States v. One Assortment of] 89 Firearms, [465 U.S. 354,] at 365, n. 7, but are “useful guideposts,” Hudson [v. United States ], 522 U.S. [93], at 99 [ (1997) ]. The factors most relevant to our analysis are whether, in its necessary operation, the regulatory scheme: has been regarded in our history and traditions as a punishment; imposes an affirmative disability or restraint; promotes the traditional aims of punishment; has a rational connection to a nonpunitive purpose; or is excessive with respect to this purpose.’
“Smith, 538 U.S. at 97, 123 S.Ct. 1140. ‘It is important to note, however, that “these factors must be considered in relation to the statute on its face,” [Kennedy v. Mendoza-Martinez, 372 U.S. 144, 169 (1963) ], and “only the clearest proof’ will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty, [United States v. Ward, 448 U.S. 242, 249 (1980) ].’ Hudson v. Unit *179 ed States, 522 U.S. 93, 100, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997).”
Lee v. State, 895 So.2d at 1041-43.
Crawford contends, however, that his case is distinguishable from Lee. Specifically, Crawford argues that this Court in Lee based “its decision, in part, on the fact that Lee failed to plead or prove whether the residency restrictions of the CNA imposed an affirmative disability or restraint on him or any other sex offender,” and, he says, he has affirmatively established that § 15 — 20—26(c), Ala.Code 1975, directly restricts his “right to live with and enjoy his children and grandchildren.” (Crawford’s brief, p. 35).
Although Crawford correctly asserts that, as a convicted sex offender, § 15-20-26(c) limits his ability to live with certain family members, that one factor is “neither exhaustive nor dispositive” of our analysis as to whether, in its necessary operation, the regulatory scheme is actually punitive in nature. Because Crawford cannot establish by “the clearest proof’ that the CNA has a punitive effect, we cannot say that the CNA is an ex post facto law.
Moreover, while Crawford’s case was pending review in this Court, we addressed an ex post facto challenge to the CNA in Cosper v. State, 89 So.3d 186, 190 (Ala.Crim.App.2010). In Cosper this Court again upheld the CNA against an ex post facto challenge stating:
“In Lee v. State, 895 So.2d 1038 (Ala.Crim.App.2004), this Court, relying on Smith v. Doe, 538 U.S. 84, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003), concluded that the CNA was not an ex post facto law, either facially or as applied to the appellant in that case, who was an adult criminal sex offender. This Court held that the CNA was intended to create a civil regulatory scheme and that it did not have any punitive effect on the appellant that would negate the legislative intent of the act. 895 So.2d at 1042-43. See Boyd v. State, 960 So.2d 717 (Ala.Crim.App.2006). See also Salter v. State, 971 So.2d 31 (Ala.Civ.App.2007).”
89 So.3d at 190.
Based on the foregoing, the judgment of the circuit court is affirmed.
AFFIRMED.
WELCH, P.J., and WINDOM, KELLUM, and BURKE, JJ., concur.

. The son whom Crawford moved in with in 2009 was not the victim of the second-degree sodomy.

. Crawford also cites K.E.W. v. T.W.E., 990 So.2d 375 (Ala.Civ.App.2007), for the proposition that the Court of Civil Appeals "concurred with this court’s opinion as to the irrebuttable nature of the presumption created by the CNA." (Crawford's brief, p. 18). K.E.W. holds, however, that "the marriage of a custodial parent to a registered criminal sex offender constitutes a material change of circumstances; that, as a matter of law, it is not in the best interests of the child to share a living arrangement with a stepparent who is a registered criminal sex offender; and that the trial court erred in denying the father's petition for a change of custody.” K.E.W., 990 So.2d at 382. Thus, K.E.W. is not applicable in this case.

. Other courts have held that states have a compelling interest in protecting the public, especially children, from recidivist sex offenders. See, e.g., United States v. Benevento, 633 F.Supp.2d 1170 (D.Nev.2009) (holding that the state has a compelling interest in preventing sex offenses by keeping track of sex offenders), United States v. Shenandoah, 572 F.Supp.2d 566 (M.D.Pa.2008) (holding that government has a compelling interest in preventing sexual offenses by alerting citizens and law enforcement officers of the whereabouts of sex offenders); Paul P. v. Verniero, 982 F.Supp. 961 (D.N.J.1997) (holding that a state has a compelling interest in protecting the public from the danger of recidivism posed by sex offenders), State v. Hall, (No. 22969, June 19, 2009) (Ohio Ct.App.2009) (not reported in Ohio App. or N.E.2d) (holding that there is a compelling interest in protecting children from sex offenders).